IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL T. G.,[1]

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

CIVIL ACTION

No. 18-1192-JWL

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Child's Insurance Benefits based on Disability (CBD) and Supplemental Security Income (SSI) benefits pursuant to sections 202(d), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 402(d), 423, 1381a, and 1382c(a)(3)(A). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.**     **Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff argues that the ALJ gave some weight to the treating source opinion of Dr. Millhuff and found that "the mild to moderate limitations contained in [Dr. Millhuff's] opinion are consistent with the claimant's activities of daily living, including the ability to socialize with friends, shop, play video games, read for pleasure, cook simple meals, and perform household chores and personal care with some prompting." (R. 18). But he claims error because the ALJ failed to include Dr. Millhuff's limitations within the residual functional capacity (RFC) he assessed. (Pl. Br. 9).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform his past

3

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issue as presented in Plaintiff's Brief and finds no error in the ALJ's RFC assessment in light of his agreement with a portion of Dr. Millhuff's opinion.

## II. Discussion

As noted above, Plaintiff argues that the ALJ gave some weight to the treating source opinion of Dr. Millhuff and found that "the mild to moderate limitations contained in [Dr. Millhuff's] opinion are consistent with the claimant's activities of daily living, including the ability to socialize with friends, shop, play video games, read for pleasure, cook simple meals, and perform household chores and personal care with some prompting." (R. 18). But he claims error because the ALJ failed to include the limitations Dr. Millhuff opined within the RFC he assessed. (Pl. Br. 9). Plaintiff's claim is based on the definition of "Moderately Limited" in the "Medical Source Statement – Mental" Dr. Millhuff completed and signed, providing his "professional opinion of the claimant's limitations." (R. 507-08). Plaintiff's counsel submitted the form for the ALJ

4

to evaluate in his consideration of this case. (R. 506). The form defines "Moderately Limited" to mean "Impairment levels are compatible with some, but not all, useful functioning. Considered to be l standard deviation below the norm, or 30% overall reduction in performance." Id. at 507.

Plaintiff points out that Dr. Millhuff opined that Plaintiff has moderate limitations (as defined above)

> in the ability[ies] to remember locations and work-like procedures, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with others without being distracted by them, make simple work related decisions, complete a normal workday or workweek, respond to changes in the work setting, and travel to unfamiliar places.

(Pl. Br. 9) (citing R. 507-08). He then argues Dr. Millhuff opined of "a 30% reduction" in these abilities, and the vocational expert (VE) testified no competitive employment is available for an individual with such limitations. Id.

The Commissioner argues that the ALJ's evaluation of Dr. Millhuff's opinion was reasonable. She argues that the ALJ discounted "Dr. Millhuff's opinions that Plaintiff would be off task 20% of the workday and would miss work four days per month" because they were internally inconsistent with his other opinions and were inconsistent with his contemporaneous treatment notes. (Comm'r Br. 8-9). She argues that the same reasons justify the ALJ in not including "a 30% reduction in the RFC assessment based on Dr. Millhuff's opinion that Plaintiff had moderate limitations." Id. at 9 (noting in fn.7 that the VE testified an individual who is unable "to remember locations and work-like procedures for up to 30% of the work day, maintain concentration and attention for at

5

least two hours at a time, or sustain a regular routine without supervision" could not maintain employment). She argues that it appears neither Dr. Millhuff nor the ALJ had a 30% overall reduction in performance in mind when considering Plaintiff's mental abilities. (Comm'r Br. 10). She argues that Dr. Millhuff's opinion that Plaintiff would be off-task due to his symptoms for only 20% of the time "is irreconcilable with the notion that Dr. Millhuff also thought Plaintiff would be incapable 30% of the time of managing particular aspects of workplace functioning, including remembering locations and work-like procedures, sustaining an ordinary routine without special supervision, or making simple-work related decisions." Id. She argues that the ALJ must have also maintained this view of the evidence or he "would have discounted the moderate limitation conclusions for the same logical reason that he discounted the 20% symptom interference/off task conclusion." Id.

Plaintiff responds that the medical records do not reflect relatively normal findings throughout the period of his treatment as the Commissioner suggests, but they demonstrate deterioration in Plaintiff's mental status. (Reply 1-2). He argues that the record does not reflect that neither Dr. Millhuff nor the ALJ contemplated a 30% reduction in performance, and the court may not "draw factual conclusions on behalf of the ALJ," id. at 3 (quoting Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001) (internal quotation marks omitted)), or "create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." Id. (quoting Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007)). She concludes that the ALJ had an opportunity to discount Dr. Millhuff's definition of "Moderately Limited"

but did not and instead "unequivocally accepted as credible the moderate limitations, defined as a 30% overall reduction, Dr. Millhuff opined [Plaintiff] suffered. In this context, there is no evidence to suggest the ALJ did not intend what he meant." (Reply 3).

### A. The ALJ's Findings

The ALJ explained his consideration of Dr. Millhuff's medical opinion:

> The claimant's medication manager, Charles Millhuff, D.O., opined that the claimant would be off task 20 percent of the workday and would miss more than four days of work per month although he has no more than moderate limitations in the ability to follow detailed instructions, complete simple work, sustain a routine, respond appropriately to changes, and maintain attention and concentration for extended periods (Ex. 7F). This opinion is internally inconsistent, and the inability to maintain an eight hour workday, five days a week is inconsistent with the essentially normal clinical signs and findings reported in Dr. Millhuff's contemporaneous treatment notes. Nevertheless, the mild to moderate limitations contained in this opinion are consistent with the claimant's activities of daily living, including the ability to socialize with friends, shop, play video games, read for pleasure, cook simple meals, and perform household chores and personal care with some prompting. Therefore, the undersigned only gives some weight to this opinion.

(R. 18).

### B. Analysis

As Plaintiff argues, the Commissioner has promulgated regulations regarding assessment of RFC. 20 C.F.R. §§ 404.1545-1546, 416.945-946. In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s). Id. at §§ 404.1545, 416.945. The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all of the claimant's impairments, including impairments which are

7

not "severe" as defined in the regulations.  Id. at §§ 404.1545(a & e), 416.945(a & e). The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments.  Id. §§ 404.1545(b,c,d), 416.945(b,c,d); see also §§ 404.1522, 416.922 (listing examples of basic work activities which may be affected by impairments).  At the ALJ hearing level, it is the ALJ's responsibility to assess RFC.  Id. §§ 404.1546(c), 416.946(c).

The Commissioner issued Social Security Ruling (SSR) 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2018).  The Ruling includes narrative discussion requirements for the RFC assessment.  Id. at 149.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id. at 150.

In Haga v. Astrue, 482 F.3d at 1208, the Tenth Circuit explained that when an ALJ gives weight to an opinion, he must explain why he rejects some of the limitations in the opinion while adopting others. The court explained that the "ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Id.

Here, both Plaintiff and the Commissioner have constructed arguments based upon their understanding of what the ALJ and Dr. Millhuff "meant" or "intended" rather than what the ALJ or Dr. Millhuff said. Dr. Millhuff said that Plaintiff was moderately limited in certain mental abilities. (R. 507-08). Dr. Millhuff's form defined that degree of limitation as "Impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." Id. at 507 (emphases added by the court). Plaintiff argues that in using the term Dr. Millhuff meant "a 30% reduction in the ability." (Pl. Br. 9). He argues, based upon the VE's testimony that an individual with these moderate limitations would not be able to maintain competitive employment. However, when questioning the VE he did not hypothesize about an individual with moderate limitations defined as "Impairment levels are compatible with some, but not all, useful functioning. Considered to be l standard deviation below the norm, or 30% overall reduction in performance." Rather, he hypothesized about an individual with the functional limitations he believed Dr. Millhuff meant:

> an individual 30% of the work day -- up to 30% of the work day would be unable to remember locations and work like procedures. Would be unable to maintain concentration and attention for at least two hours at a time. Or

9

> sustain a regular routine without special supervision. Meaning that they would have to have like a job coach or supervisor with them.

(R. 56). In her response, the VE expressed her understanding of what Plaintiff's counsel was proposing: "If you're not able to do those specific things for up to <u>30% of the day</u>, I do not believe that that -- person is competitive employable." <u>Id.</u> (emphasis added by the court). So, rather than 1 standard deviation below the norm, or a 30% reduction in performance, as Dr. Millhuff defined the limitations, Plaintiff's counsel equated the limitations with an <u>inability</u> to perform the mental abilities at issue for 30% of the day. That understanding is irreconcilable with the plain language of the definition in the medical source statement at issue.

"Norm" is defined in <u>Stedman's Medical Dictionary</u> as "1. The usual value. 2. The desirable value or behavior." <u>Stedman's Medical Dictionary</u> 1219 (26th ed. 1995). It has also been defined variously as "a set standard of development or achievement usu[ally] derived from the average or median achievement of a large group, … the average score of a specified class of persons on a specified test, … a pattern or trait taken or estimated to be typical in the behavior of a social group because most frequently observed." <u>Webster's Third New International Dictionary</u> 1540 (1986). Thus, a 30% reduction in performance from the norm would mean a 30% reduction from the typical or average behavior or mental performance of American society as a whole. Plaintiff does not explain how that reduction equates to an <u>inability</u> to use these mental abilities for 30% of the time in a workday. And, an inability to perform for 30% of the time is not what Dr. Millhuff opined.

10

Finally, the court notes that "mild limitation," "moderate limitation," "marked limitation," and "extreme limitation" are terms of art in the context of Social Security disability evaluation and are defined by the Commissioner in the regulations. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00F2 (2017). "Moderate limitation" is defined: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Id. The court entertains serious doubts whether it would be possible for a medical source to use those terms in a medical source statement and impose a different definition upon the Commissioner (or an ALJ) even if it were clear that he was using the terms to mean a degree of limitation different than the meaning used by the agency. This is especially true in a case such as this where it appears that the terms were not actually defined by the physician but were defined on a form (likely produced by an attorney or an organization of attorneys) which was merely filled in by the physician. This, however, is not a case where the physician was using a definition demonstrably different than that used by the agency. Here, Plaintiff has not shown that Dr. Millhuff's definition is materially different than the definition used by the agency and the ALJ. Therefore, he has not shown that the ALJ, contrary to his specific assertion otherwise, rejected the moderate limitations opined by Dr. Millhuff. Consequently, there was no need for the ALJ to explain why he rejected some of Dr. Millhuff's moderate limitations—he did not. Plaintiff has shown no error in the ALJ's evaluation of Dr. Millhuff's opinion or in the ALJ's RFC assessment.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated May 3, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**